ACCEPTED
15-25-00031-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/11/2025 5:20 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00031-CV

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/11/2025 5:20:37 PM
CHRISTOPHER A. PRINE
Clerk

———

*In re* NONPARTY PATIENT NO. 1, NONPARTY PATIENT NO. 2, NONPARTY PATIENT NO. 3, NONPARTY PATIENT NO. 4, NONPARTY PATIENT NO. 5, NONPARTY PATIENT NO. 6, NONPARTY PATIENT NO. 7, AND NONPARTY PATIENT NO. 8, NONPARTY PATIENT NO. 9, NONPARTY PATIENT NO. 10, AND NONPARTY PATIENT NO. 11,

*Relators.*

———

On Writ of Mandamus
493rd Judicial District Court, Collin County

———

## BRIEF FOR REAL PARTY IN INTEREST STATE OF TEXAS

———

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ABIGAIL E. SMITH
Assistant Attorney General
State Bar No. 24141756

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

Office of the Attorney General
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251
Tel: (214) 290-8830
Fax: (214) 969-7615

*Counsel for Real Party in Interest*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page(s)

Table of Contents ...................................................................................... ii

Index of Authorities .................................................................................. iv

Record References ..................................................................................... vi

Statement of Jurisdiction .......................................................................... vi

Introduction ................................................................................................ 1

Statement of Facts ....................................................................................... 3

    I.    The State Sues Dr. Lau for Violating SB 14, the Ban on Transgender Treatments for Minors, in Collin County. ........................... 3

    II.   State Serves Subpoenas on Hospitals; Non-party Patients Sue in Dallas County. ..................................................................................... 4

    III.  Collin County and Dallas County Issue Competing Production Orders.......................................................................................................... 4

    IV.  Collin County Orders the Hospitals to Comply with its Production Order................................................................................... 6

Standard of Review ...................................................................................... 7

Argument ....................................................................................................... 7

    I.    Non-party Patients Lack Standing to Challenge Ordered Productions for the Unrepresented Patients. ........................................... 7

        A.  Counsel for Non-party Patients 1–11 does not represent the Unrepresented Patients. ...................................................... 7

        B.  Non-party Patients' medical records are NOT commingled with the Unrepresented Patients' medical records. ............................ 8

    II.   The Collin County Court Properly Ordered Production of Non-party Patients' Records for Privilege and *in Camera* Review. ................... 10

        A.  Dallas County lacked jurisdiction to stay enforcement of the subpoenas because the State did not waive its sovereign immunity.........................................................................................11

        B.  Dominant jurisdiction favors adjudicating this case in *Collin* County, not Dallas County. ...............................................................13

C. Even if dominant jurisdiction favors Dallas County (which it does not), an exception applies. ...........................................19

Prayer ................................................................................................. 21

Certificate of Compliance .................................................................. 21

# Index of Authorities

**Page(s)**

**Cases**

*Brown & Gay Eng'g, Inc. v. Olivares,*
461 S.W.3d 117 (Tex. 2015)................................................................11

*C. Borunda Holdings, Inc. v. Lake Proctor Irrigation Auth.,*
540 S.W.3d 548 (Tex. 2018) (per curiam) ....................................... 12

*DaimlerChrysler Corp. v. Inman,*
252 S.W.3d 299 (Tex. 2008).......................................................... 7, 8

*Encore Enterprises, Inc. v. Borderplex Realty Tr.,*
583 S.W.3d 713 (Tex. App. 2019)................................................ 15, 16

*In re J.B. Hunt Transport, Inc.,*
492 S.W.3d 287 (Tex. 2016) (orig. proceeding) ........................... 14, 15

*Latham v. Thornton,*
806 S.W.2d 347 (Tex. App.—Fort Worth 1991, no writ) ........................ 16, 17

*In re McAllen Med. Ctr., Inc.,*
275 S.W.3d 458 (Tex. 2008) ................................................................ 7

*Nazari v. State,*
561 S.W.3d 495 (Tex. 2018) ........................................................ 12, 13

*Perry v. Del Rio,*
66 S.W.3d 239 (Tex. 2001) ...............................................................19

*Reata Constr. Corp. v. City of Dall.,*
197 S.W.3d 371 (Tex. 2006) ............................................................ 12

*In re Reed,*
No. 10-07-00272-CV, 2007 WL 4440901 (Tex. App.—Waco Dec.
19, 2007, no pet.) ...............................................................16, 17, 18

*Texas Off. of Comptroller of Pub. Accts. v. Saito,*
372 S.W.3d 311 (Tex. App.—Dallas 2012, pet. denied) .....................11

*Wyatt v. Shaw Plumbing Co.*,
 760 S.W.2d 245 (Tex. 1988) ...............................................................15

**Statutes**

Tex. Gov't Code § 311.034 .....................................................................11

Tex. Health & Safety Code § 481.071 ................................................... 3

**Other Authorities**

Tex. R. App. P. 52.3(g) ........................................................................... 9

Tex. R. Civ. P. 176.6(e) ......................................................................... 18

Tex. R. Civ. P. 215 .................................................................................17

Tex. R. Civ. P. 215(1)(a).........................................................................17

## Record References

"MR" refers to the mandamus record filed by Relators. "RMR" refers to the supplemental mandamus record filed by Real Party in Interest the State of Texas.

## Statement of Jurisdiction

Relators' statement of jurisdiction is inaccurate insofar as it concerns production of medical records for unrepresented patients. Relators have no standing to challenge production of documents related to patients they do not represent, because the record is clear that none of relators' own medical records are commingled with those of the unrepresented patients.

# INTRODUCTION

The Collin County Court has bent itself over backwards to try to appease all the parties and third parties in this case. Acknowledging that the subject matter of this case—transgender treatments for minors, sensitive medical records, and the revocation of medical licenses—is extremely charged, the court has held countless hearings on dozens of motions, authorized multiple layers of privilege and *in camera* review before the production of medical records can take place, and repeatedly directed the parties and third parties to meet and confer on agreeable production methods. But while the agreements hammered out through these hearings and conferences have appeased the State, the doctors, and both hospitals, one third party has refused to agree to *any* arrangement proposed in Collin County Court: Non-party Patients 1–11, who represent 11 of the 21 patients whose medical records are part of this case.

After finally concluding that nothing could satisfy the Non-party Patients, on February 28, 2025 the Collin County Court ordered the hospitals to produce medical records—and *only* medical records—to Non-party Patients' counsel and Dr. Lau to review for redactions and privilege, then to produce those documents to the court for *in camera* review. The court **has not yet authorized production to the State**.

Yet still the Non-party Patients are not satisfied. They filed a mandamus petition—extraordinary relief—asking this Court to bar production of their own medical records *to themselves* for privilege review, and to block production of medical records for the 10 patients they do not represent. They argue that the Dallas County Court should be able to grind the entire Collin County Court case to a halt by blocking any discovery from going forward while the Dallas case is on interlocutory appeal.

1

But this is wrong on several fronts. *First*, Non-party Patients have no standing to block the production of medical records for the 10 patients they do not represent—contrary to the baseless assertions in their mandamus, the record is clear that their medical records are not commingled with those of the unrepresented patients.

*Second*, for the Non-party Patients, the Dallas County Court does not have jurisdiction over the medical record subpoena dispute because the State has not waived sovereign immunity in that jurisdiction. And even if it had, the Collin County Court has dominant jurisdiction over this dispute, so the Dallas court was required to abate its case pending a final judgement in Collin County. By failing to do so, the Dallas court has caused multiple conflicting discovery rulings from different courts to be issued, resulting in confusion for the parties—the exact result the dominant jurisdiction doctrine seeks to avoid. Finally, even if dominant jurisdiction favored Dallas County (which Non-party Patients mistakenly argue), an exception to that doctrine applies, because allowing Dallas County to halt all document production pending appeal would prevent the Collin County case from ever reaching a resolution. Put simply, the Collin County case *cannot go forward* without medical records.

This Court should take this opportunity to end the feverish emergency filings in this case once and for all and hold that the Collin County court has jurisdiction to decide its own discovery disputes. The mandamus should be denied, and the stay lifted.

# STATEMENT OF FACTS

Many related proceedings and motions concerning the facts of this case are currently before this Court. To ease the Court's understanding, the below chart displays all ongoing litigations related to this matter and major relevant case events:



## I. The State Sues Dr. Lau for Violating SB 14, the Ban on Transgender Treatments for Minors, in Collin County.

On October 17, 2024, after an investigation, the State sued Dr. May C. Lau for violations of the Texas Deceptive Trade Practices Act and SB 14, the statewide ban on providing cross-sex hormones, puberty blockers, and so-called gender-affirming surgeries to 21 minors. The State filed its Original Petition and Request for Injunctive Relief in the 493rd Judicial District Court of Collin County. MR.24.[1] On November 4, 2024, the State filed a similar lawsuit against a different doctor, Dr. M. Brett

---

[1] The State later amended its petition to add a cause of action for violating Texas Health & Safety Code § 481.071, which prohibits the prescription of controlled substances without a valid medical purpose. RMR.32 ¶¶ 251–54.

Cooper, also with the 493rd Judicial District Court of Collin County. On January 13, 2025, the court entered a protective order to ensure privacy of the minor patients involved and their medical records. MR.144.

## II. State Serves Subpoenas on Hospitals; Non-party Patients Sue in Dallas County.

On January 16, 2025, the State served subpoenas on Children's Hospital Dallas (Children's) and UT Southwestern Medical Center (UTSW) (collectively "the hospitals") for the medical records of 21 patients treated by Dr. Lau. MR.60; MR.68.[2] The State concurrently mailed notice to all 21 patients informing them of the subpoenas.[3]

On February 2, 2025, eleven of the patients obtained representation and filed suit in Dallas County challenging the subpoenas for medical records (Non-party Patients). MR.76. On February 24, 2025, Non-party Patients also filed a motion for protection in the main Collin County Court action. RMR.39.

## III. Collin County and Dallas County Issue Competing Production Orders.

On February 28, 2025, after multiple lengthy hearings and extensive back-and-forth between the parties, the hospitals, and Non-party Patients, the Collin County Court issued an order directing the hospitals to produce "medical, laboratory,

---

[2] The State later withdrew and served substantially similar subpoenas on both hospitals.

[3] As with prior filings before this Court, the State has not attached such notices to safeguard the identities of the minor patients but can provide them to the Court on request in a supplementary filing.

billing, and prescription records for the care and treatment Dr. [Lau] provided or ordered for the patients relating to testosterone or puberty blockers from January 1, 2022, through the present." MR.415. Per the Court's Order, for the 11 patients represented by Non-party Patients, the hospitals were to produce the medical records directly to Non-party Patients' counsel to review for privilege and redactions. The hospitals and Non-party Patients would then produce those records, in both redacted and unredacted form, to the court for *in camera* review. MR.416. For the 10 patients not represented by Non-party Patients (the Unrepresented Patients), the hospitals were to produce the medical records directly to Dr. Lau's counsel to review for privilege and redactions. The hospitals and Dr. Lau would then produce those records, in both redacted and unredacted form, to the court for *in camera* review. *Id.*

The following week, on March 3, 2025, the State filed a plea to the jurisdiction and plea in abatement in the Dallas County subpoena challenge action, arguing sovereign immunity and dominant jurisdiction. MR.421. On March 6, 2025, the Dallas County Court held a hearing. The court first denied the State's plea to the jurisdiction and plea in abatement. RMR.256. The State immediately filed its notice of appeal to this Court, automatically staying proceedings in Dallas County. MR.445. Ignoring this stay, the Dallas County Court proceed to issue an order staying the hospitals from producing "*any* documents to the State until the interlocutory appeal reaches a final resolution." MR.449 (emphasis in original). The interlocutory appeal of the State's plea to the jurisdiction is currently pending before this Court at 15-25-00023-CV; the State's mandamus petition appealing the denial of its plea in

abatement and the improperly issued order is currently pending before this Court at 15-25-00039-CV.

## IV. Collin County Orders the Hospitals to Comply with its Production Order.

On March 20, 2025, the Collin County Court held another hearing in the Dr. Lau case. At that hearing, the court orally denied in part the Non-party Patients' motion for protection and ordered the hospitals to comply with production of medical records for the 21 patients, consistent with its February 28 order. RMR.333 at 77:22–25. The next day, on March 21, 2025, Non-party Patients filed this mandamus action (and a concurrent mandamus from the Dr. Cooper matter). On April 8, 2025, after a request from this Court, the Collin County Court issued an order modifying its February 28 orders and clarifying that its production orders apply only to "medical, laboratory, billing, and prescription records for the care and treatment Dr. [Lau] provided or ordered for the patients relating to testosterone or puberty blockers from January 1, 2022, through the present." RMR.399.

## STANDARD OF REVIEW

To be entitled to mandamus relief, "a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008).

## ARGUMENT

Nothing the Collin County Court has ordered has constituted an abuse of discretion. To the contrary: The contested production orders of February 28 and April 8 are both consistent with the Collin County Court's right and duty to oversee discovery in a case filed in its jurisdiction. It is the *Dallas County* Court that has exceeded its authority, and any contrary rulings it has issued should be stricken and disregarded.

## I. Non-party Patients Lack Standing to Challenge Ordered Productions for the Unrepresented Patients.

Non-party Patients do not have standing to challenge production orders for individuals they do not represent because they suffer no injury from that production. "A court has no jurisdiction over a claim made by a plaintiff without standing to assert it." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). "For standing, a plaintiff must be personally aggrieved . . . ." *Id.*

### A. Counsel for Non-party Patients 1–11 does not represent the Unrepresented Patients.

The Collin County Court ordered Children's and UTSW to produce patient medical records for 21 nonparty patients. *See* MR.24 ¶¶ 8, 57–219(State's Original Petition alleging violations of SB 14 and the DTPA for 21 minor patients). But as the

7

caption of this petition makes clear, Non-party Patients 1–11 represent only 11 of those patients. They therefore do not have standing to challenge productions of medical records related to the 10 Unrepresented Patients unless those productions would somehow cause them an injury that is "concrete and particularized, actual or imminent, not hypothetical." *Inman*, 252 S.W.3d at 304. But as the record now makes clear, production of the Unrepresented Patients' medical records will have no impact on Non-party Patients.

### B. Non-party Patients' medical records are NOT commingled with the Unrepresented Patients' medical records.

Contrary to assertions by the Non-party Patients, the record is now and always has been clear that none of Non-party Patients' medical records are commingled with the Unrepresented Patients' medical records. In the Declaration of William M. Logan in Support of Petition for Writ of Mandamus, counsel for Non-party Patients baldly asserted, without supporting evidence, that "the represented patients' documents are *very likely commingled* with the unrepresented patients' documents." *Id.* ¶ 6 (emphasis added). In their petition's Statement of Facts, citing only this Declaration in support, Non-party Patients further stated that "the Hospital Systems suggested certain records commingled the unrepresented patients' records with Relators'." Mandamus Pet'n at 6. The petition later goes on to argue that "patient visitation logs *might* blend mentions of represented and unrepresented patients." *Id.* at 13 (emphasis added).

These were false—and at the very least unsupported—statements when made, for at least three reasons. *First*, the petition argues that the Hospital Systems—

8

Children's and UTSW—informed Non-party Patients that their records may be commingled with those of the Unrepresented Patients. But the Declaration says nothing about statements from the hospitals, nor does Relators' mandamus record provide any supporting evidence for this statement. This violates Texas Rule of Appellate Procedure 52.3(g), which requires that any statement of fact in a mandamus petition "be supported by citation to competent evidence included in the appendix or record."

*Second*, this argument attempts to conflate *medical records*—the only records subject to the Collin County Court's production order—with other records, such as visitation logs and emails, which are *not* subject to production at this time. However, as the Collin County Court's April 8, 2025 Order Modifying February 28 Orders makes clear, its February 28 Order to produce documents applied only to the "medical, laboratory, billing, and prescription records for the care and treatment Dr. [Lau] provided or ordered for the patients relating to testosterone or puberty blockers." MR.415. Visitation logs and emails are not part of this production order, so any potential "commingling" for those is irrelevant.

*Third*, contrary to Non-party Patients' assertions, counsel for the hospitals have confirmed that *none of the medical records subject to production are commingled*. Counsel for UTSW confirmed "[t]here are no commingled medical records in the batches that the Court ordered UTSW to produce." RMR.405 (April 10, 2025 P. Todd email). Even prior to this confirmation, counsel for Non-party Patients had never argued that UTSW had commingled *medical records*—instead, in an email, he stated "that there are *possibly* some records (like visit logs) that may contain references to

9

multiple patients," and that "there could be electronic records, *like emails*, that might reference more than one patient." RMR.427. As for Children's, the Non-party Patients have similarly never actually alleged that Children's had commingled *medical* records—just visitor logs and emails. Counsel for Children's has "confirmed that Children's does not have any visit logs," period, and that it "did not understand the Court's order from last Friday to require the production of emails." RMR.426.

In sum, there is no evidence anywhere in the mandamus record that any medical records are commingled. (Indeed, commingling of unrelated minor patients' medical records would violate HIPAA.) Because the Collin County Court's production order contemplated the production of medical records *only*, Non-party Patients are not harmed by production of the Unrepresented Patients' medical records and have no standing to challenge it.[4]

## II. The Collin County Court Properly Ordered Production of Non-party Patients' Records for Privilege and *in Camera* Review.

When it comes to Non-party Patients' own medical records, they try to argue it both ways, but either way they lose. In Dallas County, they argued that the State waived its sovereign immunity in that forum by filing suit in Collin County, because the Dallas subpoena challenge arose out of the *same* controversy. But now before this Court, they argue that the subpoena challenge is *distinct* from the Collin County

---

[4] To the extent Non-party Patients challenged production of the Unrepresented Patients' medical records in Dallas County, they lacked standing to do so for the same reasons and any ruling barring their production in that venue is void for lack of jurisdiction.

lawsuit, so dominant jurisdiction requires that Dallas County have jurisdiction over it. Non-party Patients misconstrue the law in both respects. But regardless, the State wins: either the Dallas County challenge is distinct, in which case the State did not waive sovereign immunity, or the Dallas County challenge arose out of the same controversy, which means the Collin County Court has dominant jurisdiction.

## A. Dallas County lacked jurisdiction to stay enforcement of the subpoenas because the State did not waive its sovereign immunity.

Arguments about the Dallas County Court's dominant jurisdiction are irrelevant in the first instance because the Dallas County Court never had jurisdiction over the State to begin with.[5]

Sovereign immunity protects the State and its political subdivisions from endless litigation, while leaving to the Legislature to determine how and "when to allow tax resources to be shifted 'away from their intended purposes toward defending lawsuits and paying judgments.'" *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002) (plurality op.)). "A waiver of sovereign immunity requires clear and unambiguous statutory language." *Texas Off. of Comptroller of Pub. Accts. v. Saito*, 372 S.W.3d 311, 313 (Tex. App.—Dallas 2012, pet. denied); Tex. Gov't Code § 311.034. But often, when a governmental entity asserts claims for affirmative relief in court, the entity does not have immunity from suit for opposing claims that

---

[5] This issue is the subject of the State's appeal to this Court from Dallas County, 15-25-00023-CV, and will be discussed more fulsomely in the State's opening brief, to be filed on April 14, 2025.

11

are "germane, connected, and properly defensive to the entity's claims." *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 378-77 (Tex. 2006). In *Reata*, the Supreme Court reasoned that the government cannot complain about the burdens of litigation in this context because it has voluntarily undertaken them by affirmatively asserting its own claims. *C. Borunda Holdings, Inc. v. Lake Proctor Irrigation Auth.*, 540 S.W.3d 548, 553 (Tex. 2018) (per curiam).

**However, it is black-letter law that sovereign immunity is *not abrogated* by the State in suits where the only damages sought are civil penalties**, like in this case. *See* MR.56 ¶¶ 257–58 (Original Pet'n Prayer for Relief). In *Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018), the State brought Texas Medicaid Fraud Prevent Act claims seeking penalties against dental providers for fraudulently obtaining Medicaid payments for dental and orthodontic treatments to children. *Id.* at 495. The providers responded with counterclaims and third-party claims against the State. *Id.* The provider argued that the State had abrogated sovereign immunity by filing suit against them and that they could now sue the State in response because it was "subject to the same rules that govern other parties" and that the State "must participate in the litigation process as an ordinary litigant." *Id.* at 501 (citing cases). The trial court rejected the providers' argument and granted a plea to the jurisdiction dismissing the claims against the State. *Id.* The Supreme Court affirmed, holding that "the *Reata* rule … *never* applies when the state initiates litigation to enforce a substantive prohibition against unlawful conduct by imposing a monetary penalty." *Id.* at 507 (emphasis added). This is because "offsets," like those in *Reata*, are "never 'germane to, connected with, and properly defensive to' whether a monetary penalty is

due. Penalties are inherently one-sided. Citizens cannot claim a penalty against the state, but the state can and does frequently assess fines, penalties, and sanctions against its citizens." *Id.*

The State does not dispute that the Non-party Patients could have disputed the subpoena in Collin County Court—that would have been a motion related to a discovery issue initiated by the State in its own case and on its own claims. However, by bringing this challenge in a separate court in Dallas County, the Non-party Patients changed the form of their challenge from a motion in an ongoing case to a new lawsuit bringing a third-party claim, the exact kind of "offset" prohibited in *Nazari*. This is barred by sovereign immunity and the Dallas County Court's order is void.

## B. Dominant jurisdiction favors adjudicating this case in *Collin County*, not Dallas County.

Non-party Patients argue, without naming it, that the doctrine of dominant jurisdiction requires that the Dallas County Court have jurisdiction over the production of medical records in this case because Non-party Patients challenged the subpoena in Dallas before any other challenge in Collin County occurred. This interpretation is completely backwards: The doctrine of dominant jurisdiction requires that *Collin County*, not Dallas County, retain jurisdiction over the subpoena dispute, and the sparse case law Relators cite in support have no relevance to this case.

1. **Dominant jurisdiction applies whenever an "inherent interrelation of subject matter exists," even when two cases do not have identical issues or parties.**[6]

What Non-party Patients obliquely refer to in their brief as "coequal jurisdiction" is actually called the doctrine of dominant jurisdiction, or the "first-filed" rule. When two lawsuits that are inherently interrelated are filed in separate jurisdictions, "the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 299–300 (Tex. 2016) (orig. proceeding). (quoting *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding)). As such, the court in which the second action was filed must grant a plea in abatement unless an exception to the general rule applies. *Id*. at 294.[7]

Non-party Patients argue that dominant jurisdiction requires the subpoena disputes be heard in Dallas County, because "the subject matter of the Dallas County action [is] the subpoenas seeking documents from the Hospital Systems and the protective order sought by Relators," and "no controversy existed over the subpoenas" in Collin County until after the Dallas County suit was filed. Mandamus Pet'n at 9. They further argue this must be true because they "are not parties to the underlying lawsuit" in Collin County. But this takes far too narrow a view of the scope of

---

[6] Certain aspects of this argument are briefed in further detail in the State's mandamus petition from the Dallas County Court, available at 15-25-00039-CV.

[7] Non-party Patients have not even filed a plea in abatement in Collin County Court, which is required to assert dominant jurisdiction. It is thus doubtful whether they have even met the requirements to assert this argument on appeal.

dominant jurisdiction. To the contrary, the Supreme Court of Texas has rejected these exact arguments.

In *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245 (Tex. 1988) (overruled insofar as it improperly characterized the statutory requirements for a compulsory counter-claim), the appellee argued that a plea in abatement should not be granted in the second-filed case "[b]ecause there was a difference in both issues and parties." *Id.* at 247. The Court rejected that argument as too narrow. Rather, it held that when-ever "an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted." *Id.* "It is not required that the *exact issues and all the parties be included* in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all neces-sary and proper parties and issues." *Id.* (emphasis added). Cases are considered in-herently interrelated based on, in part, if the different parties could "be joined" in the case, *id.*, the "compulsory counterclaim rule," *id.*, and whether there is a risk of conflicting rulings creating "inconsistent obligations" for the parties and subpoena respondents, *Encore Enterprises, Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 724 (Tex. App. 2019) (applying Rule 39(a) in a dominant jurisdiction analysis).

That is exactly the case before us. While the exact issue of the subpoena chal-lenge was not at issue in Collin County Court prior to the filing of the Dallas County action, the subject matter of the Collin County and Dallas County actions are "in-herently interrelated." *Wyatt*, 760 S.W.2d at 247; *accord J.B. Hunt*, 492 S.W.3d at 292. The broader subject matter of medical records had certainly come up in Collin County prior to Non-party Patients' subpoena challenge—the State's Original

15

Petition makes reference to medical records, and the parties had all entered into a protective order regarding medical records in Collin County months before the subpoenas were first challenged. Non-party Patients have actively pursued their claims and motion for protective order in Collin County already—indeed, the partial denial of the former is the basis of this mandamus petition, and the State has separately argued that they should intervene in the Collin County action. *See* RMR.443 (April 10, 2025 Motion to Strike). Furthermore, the conflicting rulings from the Collin County and Dallas County courts have *already* created conflicting rulings and "inconsistent obligations" for the parties regarding medical records. *Encore*, 583 S.W.3d at 724. Dominant jurisdiction clearly cuts in favor of the Collin County Court.

### 2. Non-party Patients' cited cases are inapposite.

Non-party Patients primarily rely on two cases that supposedly demonstrate Dallas County has jurisdiction over the subpoena disputes: *Latham v. Thornton*, 806 S.W.2d 347 (Tex. App.—Fort Worth 1991, no writ), and *In re Reed*, No. 10-07-00272-CV, 2007 WL 4440901, at *1 (Tex. App.—Waco Dec. 19, 2007, no pet.). But neither have any bearing on this case, and in any event, the latter case supports the State's position.

Non-party Patients cite *Latham* to support the proposition that courts "routinely" distinguish between a main suit and subpoena challenges for the purposes of dominant jurisdiction. Mandamus Pet'n at 9. As an initial matter, a single case from the 1990s does not establish a holding as "routine." But more importantly, *Latham* concerned a subpoena for a deposition, not production of documents. That is a key distinction because *Latham*'s entire reasoning was grounded solely on the fact that a

16

nonparty witness would have to travel outside his home jurisdiction, and had nothing to do with dominant jurisdiction or the "first-filed" rule. In *Latham*, the defendants were parties to a Wichita County Court action. 806 S.W.2d at 348. In connection with that action, they subpoenaed the Securities Commissioner of Texas to attend a deposition in Travis County, where he lived. *Id.* After the Commissioner refused to attend based on improper notice, the defendants noticed hearings in both Travis County and Wichita County. *Id.* The Travis County Court issued an order prohibiting the deposition, but the Wichita County Court issued a conflicting order that the deposition must go forward. *Id.* at 349. The Commissioner appealed the Wichita court's ruling via mandamus.

The Waco Court of Appeals granted the mandamus based on Texas Rule of Civil Procedure 215(1)(a), which concerns in-person depositions of non-parties. *Latham* held that in such cases, "jurisdiction over the deposition of relator resides with the Austin court," *id.*, because Rule 215(1)(a) "is designed to spare the non-party witness the expense and inconvenience of possible cross-state travel." *Id.* (citation omitted). None of those rationales apply here—Rule 215 is not at issue, because this dispute does not involve a deposition, and none of the Non-party Patients are being expected to travel, or do anything—instead, it is the hospitals that are producing records.

*In re Reed* is similarly inapposite, and in any event supports the State's position. In that case, a district court clerk filed a mandamus petition seeking relief from conflicting orders regarding expunged records. 2007 WL 4440901, at *1. An Ellis County district court had ordered the district clerk to expunge certain records; later,

a Johnson County district court ordered the district clerk to produce those records. *Id.* Contrary to Non-party Patients' assertions, this holding *supports* the State's argument that Collin County had dominant jurisdiction. By holding that the Ellis County district court retained jurisdiction over the subpoena challenge, the Waco Court of Appeals allowed the Ellis County court to retain dominant jurisdiction over the records that it had previously ordered expunged, even though the subpoena originated from a different lawsuit in a different county. *Id.* Furthermore, the case was in a substantially different posture from this case. In *Reed*, there is no indication that the district clerk invoked (or even could have invoked) governmental immunity, because she was never sued. By contrast, here, the State has filed a plea to the jurisdiction and plea in abatement in Dallas County.

### 3. Dominant jurisdiction does not render Tex. R. Civ. P. 176.6(e) a nullity.

Finally, the doctrine of dominant jurisdiction does not render Texas Rule of Civil Procedure 176.6(e) a nullity, for a number of reasons. *First*, many of the factors at play in this suit, such as sovereign immunity and suits for civil penalties, apply *only* to lawsuits involving the State under this specific fact pattern—they have no impact on the general operation of the rule, or even the operation of the rule in other cases where the State may be involved with different facts. *Second*, even if the subpoena challenge in Dallas County is abated, preserving it pending the outcome of the Collin County lawsuit still confers benefits on the Non-party Patients. For example, if the Non-party Patients' challenges in Collin County were dismissed due to a jurisdictional or procedural defect, they may be able to resume their claims in Dallas County,

18

if that defect were not present in that venue. And if the Collin County Court had refused to adjudicate Non-party Patients' discovery challenges altogether, they could move to reinstate their Dallas County lawsuit.

### C.  Even if dominant jurisdiction favors Dallas County (which it does not), an exception applies.

The doctrine of dominant jurisdiction clearly indicates that Collin County has jurisdiction over production of medical records. But even if Non-party Patients were right that Dallas County is the first-filed jurisdiction, Collin County would still have jurisdiction over this issue because an exception to dominant jurisdiction would apply.

The Supreme Court of Texas has held that even where all the requirements of dominant jurisdiction are met, it shall not apply, and the second-filed court shall retain jurisdiction "when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication." *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). This is a textbook case for the application of that exception. If the Dallas County Court is allowed to retain jurisdiction over this dispute and its stay on *any* production of *any* documents by the hospitals is allowed to remain in force, the entire Collin County lawsuit will grind to a halt. This is a case about medical records. The State *cannot* pursue its case against Dr. Lau, or move forward in any meaningful way, without medical records proving that Dr. Lau illegally prescribed testosterone and puberty blockers to minor females. There is no way for the State to pursue its SB 14 or DTPA claims against Dr. Lau in the Dallas County Court action because Dr. Lau is not even a party to that dispute. But by contrast, all of the Non-party Patients'

19

claims about production of medical records can be heard in Collin County. In fact, they already *have* been—thus far, the Collin County Court has devoted the vast majority of its hearings and rulings on this case to dealing with Non-party Patients' motions regarding the production of medical records. The complained-of order in this mandamus petition is the result of those several months of adjudication.

Because the case cannot move forward if Dallas County retains jurisdiction over the document dispute, but Collin County suffers no such infirmities, Collin County must be allowed to continue overseeing the production of documents.

## Prayer

The Court should deny the mandamus petition and lift the stay, allowing production to proceed in Collin County.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division

*/s/ Abigail E. Smith*
ABIGAIL E. SMITH
Assistant Attorney General

ROB FARQUHARSON
Assistant Attorney General

Office of the Attorney General
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251
Tel: (214) 290-8830
Fax: (214) 969-7615

*Counsel for Real Party in Interest State of Texas*

## Certificate of Compliance

Microsoft Word reports that this document contains 5,048 words, excluding exempted text.

*/s/ Abigail E. Smith*
ABIGAIL E. SMITH

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Abigail Smith
Bar No. 24141756
pauline.sisson@oag.texas.gov
Envelope ID: 99592890
Filing Code Description: Response
Filing Description: 20250411 States Mandamus Response Lau
Status as of 4/14/2025 7:03 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Houston Docketing | | ecf_houston@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 4/11/2025 5:20:37 PM | SENT |
| David Phillips | | dphillips@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Hollie Albin | | hmalbin@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Sarah McGrath | | smcgrath@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Jonathan Hung | | johung@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Patrick Todd | | patrick.todd@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Martin Cohick | 24134042 | martin.cohick@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Cory Sutker | 24037569 | cory.sutker@cooperscully.com | 4/11/2025 5:20:37 PM | SENT |
| Alexander Wolf | 24095027 | awolf@steptoe.com | 4/11/2025 5:20:37 PM | SENT |
| Craig Smyser | 18777575 | csmyser@steptoe.com | 4/11/2025 5:20:37 PM | SENT |
| Drew Padley | 24111325 | dpadley@steptoe.com | 4/11/2025 5:20:37 PM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 4/11/2025 5:20:37 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Amy Ooi | | amy@leboeuflaw.com | 4/11/2025 5:20:37 PM | SENT |
| Amy Patterson | | apatterson@co.collin.tx.us | 4/11/2025 5:20:37 PM | SENT |
| Jackie Cooper | | Jackie.Cooper@cooperscully.com | 4/11/2025 5:20:37 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Abigail Smith
Bar No. 24141756
pauline.sisson@oag.texas.gov
Envelope ID: 99592890
Filing Code Description: Response
Filing Description: 20250411 States Mandamus Response Lau
Status as of 4/14/2025 7:03 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David G. Shatto | | david.shatto@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 4/11/2025 5:20:37 PM | SENT |

Associated Case Party: NonParty Patient No. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jervonne Newsome | | JNewsome@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Thanh Nguyen | | TDNguyen@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Evan Lewis | | edlewis@winston.com | 4/11/2025 5:20:37 PM | SENT |
| William Logan | | WLogan@winston.com | 4/11/2025 5:20:37 PM | SENT |
| Olivia Wogon | | owogon@winston.com | 4/11/2025 5:20:37 PM | SENT |