**TEXAS ATTORNEY GENERAL'S OFFICE; Texas State Securities Board; Richard D. Latham, Texas Securities Commissioner; Sue B. Roberts, Staff Attorney for the State Securities Board; and Assistant Attorneys General Fred I. Lewis, Anna E. Gonzales, and Deborah H. Loomis, Appellants,**

v.

**George G. ADAMS, George R. Adams, George J. Adams, Jerry Phillips and Dale F. Young, Appellees.**

**Nos. 2–89–281–CV, 2–89–291–CV.**

Court of Appeals of Texas,
Fort Worth.

Aug. 15, 1990.

Jim Mattox, Atty. Gen., Mary F. Keller, First Asst. Atty. Gen., Lou McCreary Executive Asst. Atty. Gen., David A. Talbot, Jr., Sp. Asst. Atty. Gen., Chief, Finance Div., Edna Ramon Butts, Asst. Atty. Gen., Chief, Ins., Banking, and Securities Section, and Fred I. Lewis and Anna E. Gonzales, Asst. Attys. Gen., Austin, for appellants.

Jenkens & Gilchrist, A Professional Corp., and William D. Sims, Jr., Brian J. Hurst and David B. Dyer, Dallas, for appellees.

Before WEAVER, C.J., and JOE SPURLOCK, II, and HILL, JJ.

## OPINION

JOE SPURLOCK, II, Judge.

This appeal is from the trial court's discovery and sanction orders entered prior to judgment in a pending case, which were severed out to permit this appeal.

Appellants complain in ten points of error of a sanction entered in a discovery order, and of portions of the discovery order itself. As discussed hereafter, we find error and reverse the judgment.

One of the appellants, Richard Latham, is the Securities Commissioner of Texas. The other appellants are various attorneys

representing different state interests involved in the discovery process in the trial of the pending case. The appellees are defendants in the pending case, a class action lawsuit filed against them by citizens of Wichita County. The underlying claim in that lawsuit is that the defendants there, appellees herein, are alleged to have defrauded eleven hundred securities investors in Wichita Falls, Texas of approximately twenty million dollars. During the suit, appellees sought discovery of numerous documents alleged to be in the possession of Latham, in his capacity as Securities Commissioner of the State of Texas. The trial court ordered Latham, a non-party to the main suit below, to disclose his enforcement file and private registration materials to the appellees. The trial court entered discovery orders, and at least two mandamus actions have been brought to this court from that discovery activity.

One of those actions resulted in a mandamus order issued conditionally against the trial judge (who is no longer a sitting judge, but was sitting by assignment in the 30th District Court) in Cause No. 2–89–140–CV Tex.App.—Fort Worth, September 25, 1989 (unpublished). In that order, this court made findings that certain of the material ordered produced by Latham were not in his possession, and held that he had no duty to produce documents which he did not possess. Notwithstanding our conditional grant, the trial judge entered sanctions and ordered additional discovery. In deciding the case on appeal, we will in detail discuss only points of error one, two and three, and points of error seven through ten.

Appellees are defendants in the court below in parallel civil and criminal proceedings. In the criminal prosecution brought by the state, and in the civil case brought by private investors, appellees are accused of defrauding approximately eleven hundred investors by failing to disclose material information about the securities of the defendants' company, First Mercantile Corporation (hereinafter "FMC"). The State's securities board, hereinafter the "Securities Board", is a law enforcement agency in which the Securities Commissioner, with the Attorney General, is charged with the duty to investigate criminal violations of state securities law. TEX.REV.CIV.STAT. ANN. art. 581–3 (Vernon 1964). The Commissioner is required to give to the District Attorney all evidence of criminality gathered from the Securities Board's investigation. *Id.* In the fall of 1988, the Securities Board began an investigation into the sale of securities by FMC. At that time the Board believed that criminal referrals were likely.

In December of that year, the District Attorney of Wichita County, Barry Macha, (hereinafter Macha) contacted the Securities Board for assistance in pursuing the criminal securities fraud investigation. In February of 1989 Latham turned over his criminal investigation documents to Macha. However, he kept in his enforcement file the Securities Board's attorney's notes, copies of investor complaints, and agency correspondence with investors and witnesses. In April of 1989 appellees' attorneys sent a letter under the Texas Open Records Act to Latham requesting a number of the documents, including the registration and enforcement file. These documents were subsequently subpoenaed and are the subject of the discovery order in the court below. Latham turned over all public records including the public registration, retaining only the private registration file containing the thought processes of the attorneys and the enforcement file.

In May 1989, the Wichita County grand jury returned multiple indictments against appellees for theft by deception, securities fraud, and aggravated perjury. Subsequently, appellees issued a *subpoena duces tecum* in the civil lawsuit to take the deposition of Commissioner Latham, requesting that he bring five categories of documents:

(1) Completed copies of all questionnaires sent by the Board to FMC investors [hereafter the "FMC questionnaires"].

(2) All written complaints by FMC investors to the Board or any official of the State of Texas [hereafter the "investor complaints"].

(3) All internal memoranda of the Board concerning the registration of FMC securities.

(4) Notes, worksheets, and marked-up drafts prepared by the staff or members of the Board in the course of the registration of FMC's securities.

(5) All correspondence, notes, and documents of any nature constituting or reflecting written or oral communications between the Board and (a) the Plaintiffs or their lawyers, (b) FMC investors or their lawyers; (c) Elden Daves; (d) lawyers for FMC, the FMC Creditors Committee, or Elden Daves.

Commissioner Latham filed a Motion to Quash the Deposition Duces Tecum and later an amended motion to quash. Upon Latham's refusal to comply fully with the request for the *subpoena duces tecum,* the trial court held a hearing and at the conclusion thereof ordered the Commissioner *subject to contempt and sanctions* to produce for an in-camera inspection all documents requested by appellees, including the criminal investigation documents in the possession of District Attorney Macha. Latham submitted, in late June 1989, all the subpoenaed documents that were in his possession to the trial court for its in-camera inspection. Latham could not comply with the court's order to produce documents that were in Macha's possession and he filed a Petition for Mandamus in the Second Court of Appeals complaining of the contempt and sanctions. While that mandamus action was pending, appellees filed three Motions for Contempt on various grounds against the Commissioner and his attorneys in the court below.

On September 13, 1989, the trial court held a hearing on all the motions for sanctions and contempt against Commissioner *Latham and the attorneys.* It is maintained that neither the Commissioner nor the attorneys received any notice either in writing or orally concerning the hearing. At that hearing appellees sought immediate production of all in-camera documents and $11,026.00 in costs against the Commissioner and the attorneys. Appellees'

counsel swore in their affidavit that the $11,026.00 in attorney's fees was solely for obtaining the FMC questionnaires. As appellants point out, twice more appellees' counsel swore that the $11,026.00 in costs was related solely to the Commissioner's refusal to turn over the FMC questionnaires. Subsequent to that hearing the trial court assessed the requested $11,026.00 in costs against appellants jointly and severally in an order that severed the action against the Commissioner and the attorneys, non-parties, from the main case. Three days later on September 25th, this court issued its conditional Writ of Mandamus, directing the trial court to relieve the Commissioner from producing the FMC questionnaires and all other documents that we found were not to be in his possession. Although the trial court had imposed $11,026.00 in sanctions against the Commissioner and his attorneys for failing to produce these questionnaires, the court nevertheless refused to vacate the sanctions order. The court did hold a hearing on the Commissioner's Motion for Reconsideration of that order on October 20, 1989.

At the October hearing, the appellees shifted their grounds for seeking sanctions against appellants from that of failing to produce the FMC questionnaires to that of allegedly making "frivolous" objections to producing the in-camera documents. The court took into account $1,397.50 as a reduction, being the amount incurred by appellees in pursuing the mandamus action in the Court of Appeals, and thereafter, entered its order that the remaining $9,628.50 in sanctions be upheld against appellants as a sanctions order; but it was not a contempt order.

We will now discuss appellants' points of error seven, eight, nine and ten as a single point of error because they are closely related. The substance of the points of error is that the trial court abused its discretion in assessing sanctions against Commissioner Latham and his attorneys because he is a non-party to the lawsuit, and because this court found that Commissioner Latham did not have possession of the documents the trial court ordered him to produce, and further because this court ordered that the

Commissioner need not produce such documents to the trial court.

Appellants argue that the court may not impose sanctions upon them. They argue that the trial court has jurisdiction *to impose upon a non-party only contempt,* and not sanctions. *See* TEX.R. CIV.P. 215(2)(c). We agree. In its order, the trial court cited as its reason for the sanction the following statements:

Except for those documents not "in possession" of the Commissioner as found by the Court of Appeals, the claims of privilege are groundless and not warranted by any good faith argument for the extension, modification or reversal of existing law. Pursuant to Rule 13, T.R.C.P., this conduct is subject to sanctions. Pursuant to that Rule, the Court may not impose sanctions if the offending party withdraws or amends the pleading, motion or other paper to the satisfaction of the Court within the ninetieth (90th) day after the Court makes a determination of such violation, or prior to the expiration of the trial court's plenary power, whichever first occurs. The Court therefore orders no additional sanctions pursuant to Rule 13, at this time, but reserves the right to do so pursuant to such Rule.

The court then orders that the defendants in the civil case below, appellees herein, recover from appellants herein individually, jointly and severally the sum of $9,628.50 which the court found to be reasonable and necessary attorney's fees incurred by the appellees as the result of the groundless, frivolous, and abusive discovery practices of the Securities Commissioner and his attorneys (presumptively for successfully defending against an abusive discovery order). The court further ordered that the attorney's fees be assessed as costs of the court.

Contrary to the findings of the court that the appellants' claims of privilege are groundless and subject to sanction, it is clear that the trial court engaged in an abuse of its power in ordering a sanction. The court cites rule 13 as its authority and we note that rule 13 is directed *to parties*

*or their attorneys.* See TEX.R.CIV.P. 13. In this instance the Commissioner is not a party to the suit. Further, rule 13 requires that before a court impose *any sanctions* under rule 13 that it must first determine "good cause," the particulars of which must be stated in the sanction order. The court has not stated any such grounds for the imposition of sanctions, other than the trial court's disagreement with this court's mandamus finding concerning the trial court's discovery orders. In spite of this court's clear holding that the Commissioner was not at fault and did not have to provide for the discovery of certain named documents which the trial court had ordered produced, the trial court nevertheless went ahead with its establishment of a sanctions order against a non-party and without stating the grounds for "good cause." This is a clear abuse of its power, and outside its authority under rule 13. Points of error seven through ten are sustained, and we reverse the sanction order.

We now turn to the points of error one, two, and three. These relate to the trial court's order for discovery of the Commissioner's enforcement file, the Commissioner's private registration materials, and the court's failing to stay all discovery of documents from the Commissioner in the civil lawsuit until the criminal trial has concluded.

The underlying authority upon which appellants rely to resist discovery of the Commissioner's enforcement and registration file is the authority of TEX.REV.CIV. STAT.ANN. art. 581–28 (Vernon Supp. 1990). The Commissioner maintains that section 28 protects all the Commissioner's law enforcement file which includes the state's Security Board's internal attorney's notes, communications with investors, and witness statement notes. He points out that the provisions of section 28 protect all of the internal notes, memorandums, reports or communications made in connection with a matter that the Commissioner has the authority by this Act to consider and investigate. Absent a showing of good cause, the Commissioner maintains that neither appellees nor any other person may

discover the registration and enforcement files. *See Texhoma Stores, Inc. v. American Central Ins. Co.,* 424 S.W.2d 466, 472 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r. e.).

We agree with appellants that there is no evidence in the record to show a need for discovery of the internal documents of the state's Securities Board. The Commissioner notes that the FMC questionnaires are already in the hands of the appellees by which they may seek to impeach certain investors. They know the names of those investors and nothing prevents them from deposing any of the investors that they so choose. Appellants note that the trial court made no actual findings of good cause on behalf of appellees to discover the Commissioner's files, nor can there be any good cause found by implication.

The Commissioner argues that the Texas Supreme Court has explicitly recognized a common-law law enforcement privilege by noting: "[w]e recognized this privilege in civil litigation for law enforcement investigation." *Hobson v. Moore,* 734 S.W.2d 340, 341 (Tex.1987). The Commissioner argues that although there is some confusion about the basis of such privilege, it is beyond dispute that the law enforcement agencies could not function if criminal defendants could use liberal civil discovery processes to their advantage in their criminal defense. We agree.

The legislature recognized the extent of this privilege and the abuse to which criminal defendants may put such a discovery when there is a related civil suit, when it enacted in 1989 section 28 to article 581. Section 28 provides that defendants must demonstrate good cause to obtain any internal reports or law enforcement documents of the state Securities Board, as follows:

> However, except for good cause the order may not extend to a record or communication received from other law enforcement or regulatory agencies or to the internal notes, memoranda, reports, or communications made in connection with a matter that the Commissioner has

the authority by this Act to consider or investigate.

TEX.REV.CIV.STAT.ANN. art. 581–28.

■ The Commissioner argues that the good cause requirement under this section should be as it is in other discovery statutes, which would be to require a party to file a motion seeking to establish good cause; that the party has substantial need for the material and that it is unable to obtain it from any other source. *See Texhoma,* 424 S.W.2d at 472–73. Appellants note that appellees have done nothing to meet their burden of showing good cause in this matter, nor did the trial court make a finding in its orders that appellees had established any cause to obtain the Security Board's law enforcement documents. We agree with appellants that a proper showing of good cause is now necessary under the statute.

■ We conclude that the Commissioner's enforcement file is not discoverable absent a showing of good cause from the appellees in this trial. This file includes investor's complaints, letters sent by the Securities Board staff to investors and other witnesses, and the Securities Board's attorneys' notes of interviews of the witnesses and their opinions of FMC's alleged criminal violations. Further, the Securities Board attorneys' notes are not discoverable as they are protected by attorney work product privilege. *Hill Tower, Inc. v. Dept. of Navy,* 718 F.Supp. 562 (N.D.Tex. 1988). We have previously held in the mandamus matter that the notes of the attorney Roberts of witness interviews and analysis of the case were likewise privileged. Accordingly, we find that the trial court abused its discretion in granting the discovery request that it did and we affirm points of error one, two and three and reverse the judgment of the court concerning the discovery matters discussed herein.

As to points of error four, five and six we note the following: point of error number four requests that we delay all discovery until the criminal trial has concluded; point of error five requests that we prohibit the discovery of the registration materials because the documents are pro-

tected by the agency's decision making privilege; and, point of error six requests that we deny discovery requests because the documents sought are irrelevant to the subject matter of civil litigation.

 We disagree with the contentions made by the appellants in point of error number four, that this court should delay discovery of all matters until the criminal trial is concluded, because as we have noted before, upon a proper showing of good cause we believe that the appellees might, upon proving substantial need in that they could not obtain the material from any other source, discover certain of the material which the Commissioner still has. In this connection we deem it not good public policy to deny civil litigants their entitlement to a fully authorized discovery to assist in preparation of the civil lawsuit merely because criminal matters may be pending against some of the civil litigants. We feel the better public policy to be served would be for the successor trial judge to properly handle the matter in a discretionary fashion under the rules and in this particular case under the provisions of TEX.REV.CIV.STAT.ANN. art. 581–28. Point of error four is overruled.

As to points of error five and six, we note that appellants have commented that most of the private registration material has already been made public to appellees, therefore, we consider their discussion under point of error five in this regard moot except for the Commissioner's mental impressions concerning registration of the FMC security and the Board Analyst's recommendations to him. We have previously held that this registration material is under the purview of section 28 noted above, and would be discoverable only in accordance with the legislative rule thereunder. Therefore, we deny point of error number five and further, we deny point of error number six where the Commissioner argues that certain material and documents are irrelevant to any subject matter in the civil litigation. This is a matter solely within the discretion of the trial court. Relevancy is not a decision for this court to make, at least insofar as it pertains to a non-party in a suit when the main case has yet to be tried.

Having granted points of error number one through three and seven through ten, we accordingly reverse the judgment of the trial court and order that the order for discovery and sanctions be held null and void and order that appellees pay all costs in this matter.

The judgment is reversed.